IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MATTHEW BORDEN**<br>　　　　　**Plaintiff,**<br>　　　v.<br>**NGM INSURANCE COMPANY**<br>　　　　　**Defendant.** | **CIVIL ACTION NO. 20-1878** |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                   **March 8, 2023**

This is an insurance dispute between Plaintiff Matthew Borden and his insurer Defendant NGM Insurance Company, arising out of NGM's handling of Plaintiff's underinsured motorist ("UIM") claim. Defendant has moved for summary judgment on the sole remaining claim in this case, for insurance bad faith.[1] For the reasons that follow, NGM's motion will be granted.

**I.       BACKGROUND**[2]

　　　**A.  The Initial Claim**

Plaintiff is the owner of Matthew Borden Heating and Cooling, Inc., an air-conditioning and heating business. On August 12, 2017, Plaintiff sustained injuries in a car crash when the tortfeasor, Linda Reilly, struck the rear passenger side of Plaintiff's company vehicle. Plaintiff's injuries included spinal cord compression and cervical spinal stenosis. At the time of the accident, Plaintiff was insured under a commercial automobile insurance policy issued by NGM ("the Policy").

---

[1] Plaintiff's Amended Complaint asserts claims for breach of contract (Count I) and insurance bad faith (Count II). As explained below, both parties agree that Plaintiff's breach of contract claim was rendered moot on April 30, 2020, when NGM tendered its policy limits.

[2] The following facts are largely undisputed; where disputed they are viewed in the light most favorable to Plaintiff as the non-moving party.

On October 13, 2017, Plaintiff notified NGM of the accident and his need for ongoing medical treatment. NGM recorded Plaintiff's claim as "medical only" and assigned claims adjuster Lynn Cantone to handle the payment of Plaintiff's first-party medical benefits.[3] Plaintiff informed Cantone of the facts of loss and authorized NGM to communicate with his healthcare providers and obtain his medical records.

On February 10, 2018, Robert Casson, NGM's first-party medical benefits manager, reported in Plaintiff's claim log ("the Claim Log") that "UIM [was] possible, but not needed at this point."[4] Two months later, Plaintiff contacted NGM and spoke with Susan Krull, the NGM claim adjuster who succeeded Cantone, and informed her that he may pursue a legal action for his injuries. At no point did Krull inform Plaintiff that he was entitled to UIM benefits under the Policy.

### B. The Representation Letter

In May 2019, Plaintiff retained counsel to pursue a claim against Reilly. Plaintiff's counsel sent NGM a representation letter ("the Representation Letter") on May 10, 2019, advising NGM that Plaintiff "may initiate a cause of action against the tortfeasor and seek to obtain a judgment in excess of the tortfeasor's policy limits," and that NGM "[would] be bound by the judgment."[5] The Representation Letter further stated that Plaintiff had received "extensive treatment for cervical injuries, including injections" and that "his physician [was] recommending a multi-level surgical fusion surgery."[6]

---

[3] Def.'s Mot. Partial Summ. J. Ex. 8 [Doc. No. 33-9] at ECF page 37.
[4] Def.'s Mot. Partial Summ. J. Ex. 8 [Doc. No. 33-9] at ECF page 34.
[5] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 2.
[6] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 2.

Upon receipt of the Representation Letter, NGM created a UIM file for Plaintiff's claim and assigned Denise Domiter to handle the claim. On May 17, 2019, Domiter provided Plaintiff's counsel with relevant Policy documents and requested information regarding Plaintiff's injuries and treatment. Plaintiff's counsel sent a reply email three days later, stating that he had "requested [Plaintiff's] medical records and [would] forward them once they [were] received."[7] Domiter sent two follow-up letters to Plaintiff's counsel in June and July 2019, requesting that counsel "provide information regarding [Plaintiff's] injuries and treatment to date."[8] Plaintiff's counsel did not respond to either correspondence.[9]

Discovery in this action revealed that, at some point prior to May 2019, NGM had obtained several of Plaintiff's treatment records in connection with his first-party claim. However, Domiter never reviewed these records, nor did she review the entries in Plaintiff's Claim Log. In August 2019, NGM reassigned Domiter to a different department, thereby removing her from Plaintiff's case. While NGM was "in the process of trying to replace [Domiter]," Dana Gucciardi, who had been Domiter's manager, oversaw Plaintiff's claim.[10]

### C. The Demand Package

On November 14, 2019, Plaintiff's counsel provided NGM with a demand package outlining Plaintiff's UIM claim and demanding payment of benefits. The demand package included Plaintiff's treatment records, a life care plan, the expert report of Dr. Guy Fried, and a coverage letter from Reilly's insurance company, Erie Insurance Exchange. According to the

---

[7] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 6.

[8] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF pages 12, 13.

[9] Although Plaintiff's counsel did not receive Plaintiff's medical records until September 2019, Plaintiff's counsel failed to update Domiter in the interim as to the status of the records.

[10] Def.'s Mot. Partial Summ. J. Ex. 11 [Doc. No. 33-12] at ECF page 4.

Erie coverage letter, Reilly's policy provided policy limits of $100,000 in bodily injury coverage. Plaintiff's counsel asserted in the demand letter that Plaintiff's "medical special damages alone are estimated at just under $500,000" and that "the available $100,000 in third-party insurance is insufficient" to compensate Plaintiff for his injuries and damages.[11] Plaintiff demanded "$100,000 in UIM benefits coverage, stacked across seven vehicles for a total available UIM coverage . . . of $700,000."[12]

Receiving no response from NGM, Plaintiff's counsel sent another letter on December 10, 2019, cautioning NGM that if it "continues to delay paying [Plaintiff's] UIM benefits, [counsel] will have no choice but to join a UIM breach of contract claim to the already pending third-party litigation."[13] Gucciardi replied on December 12, 2019, stating that he "tried to email [Plaintiff's counsel] unsuccessfully regarding [Plaintiff's] claim," and that he was requesting to schedule an Examination Under Oath ("EUO") of Plaintiff regarding the extent of his injuries.[14] Gucciardi further provided that, with respect to Plaintiff's demand of $700,000, NGM's records showed only "[five] vehicles on the policy [as] opposed to [seven]."[15]

On December 16, 2019, Plaintiff's counsel informed Gucciardi that he "checked [his] email inbox, and [had] not received any messages from [NGM]" and that "no messages were inadvertently filtered to junk mail."[16] Plaintiff's counsel stated that NGM still had not addressed whether it was "accepting or denying" Plaintiff's UIM claim, and that NGM had violated the

---

[11] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 16.

[12] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 16.

[13] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 14. Plaintiff filed a lawsuit against Reilly on August 7, 2019 in the Delaware County Court of Common Pleas.

[14] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF pages 93, 94.

[15] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 94.

[16] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 92.

Pennsylvania Unfair Insurance Practices Act ("UIPA") by failing to complete its investigation within 30 days of the November 14, 2019 demand package.[17] The email further provided, in relevant part:

> Concerning your reference to the number of vehicles on the policy, I have attached a copy of the policy in force that was provided by [NGM] when my firm requested a copy of the same. As you will note, the declaration page includes seven (7) vehicles. If vehicles were added or removed before the August 12, 2017 date of incident, kindly provide me with a copy of the policy and the declarations page as it existed on August 12, 2017.
>
> …
>
> It is unclear . . . why [NGM] believes that an examination under oath performed by an attorney would reveal anything about the extent of [Plaintiff's] injuries, or for that matter, his current medical condition. This information is already borne out in [Plaintiff's] medical records following the incident and up through the present as well as in the reports authored by Dr. Fried and Mr. Karras—all of which has already been provided to [NGM]. The request to examine [Plaintiff] under oath outside the terms of the policy "regarding the extent of his injuries" is even more perplexing given that the policy provides that, if requested, [Plaintiff] must submit to be examined by a physician of [NGM's] choice. If [NGM] genuinely believed it needed more information about the extent of [Plaintiff's] injuries a physician would actually be able to provide that information as well as information about [Plaintiff's] current condition.[18]

NGM did not reply to counsel's email. On February 25, 2020, Plaintiff's claim was reassigned to NGM claims adjuster Steven Miles. Miles notified Plaintiff's counsel of the reassignment and requested information and documents, including confirmation of Reilly's ownership of her vehicle, the declarations page for Reilly's Erie policy, an update on whether Plaintiff had scheduled surgery, and a copy of the estimates of damages for Plaintiff's vehicle. Plaintiff's counsel responded on March 6, 2020, answering each of Miles' inquiries and providing the materials sought. Plaintiff's counsel noted that NGM still had not provided

---

[17] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 92.

[18] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 92.

Plaintiff with (1) its authority for requesting an EUO of Plaintiff, (2) a confirmation that NGM had provided counsel with a correct copy of the Policy, and (3) written confirmation that NGM was accepting Plaintiff's UIM claim.

Plaintiff's counsel further stated that neither Gucciardi nor anyone from NGM "ha[d] even acknowledged [counsel's] December 16, 2019 correspondence let alone provided the requested, basic confirmations."[19] Accordingly, Plaintiff's counsel enclosed a copy of Plaintiff's proposed Complaint against NGM, and advised that it would be filing the Complaint "as early as next week" unless NGM were to confirm that it was "accepting" Plaintiff's UIM claim and respond to Plaintiff's demand for the policy limit of (what Plaintiff believed at the time to be) $700,000.[20]

Counsel for NGM responded on March 31, 2020 with a detailed letter that included: (1) the factual background of Plaintiff's UIM claim; (2) NGM's responses to the issues raised in Plaintiff's counsel's March 6, 2020 letter; (3) NGM's acknowledgement that Plaintiff was an "insured" under the Policy for purposes of his UIM claim; (4) an explanation regarding Plaintiff's counsel's misinterpretation of the number of vehicles covered under the Policy;[21] (5) NGM's continued review of Plaintiff's claim; (6) NGM's request for an EUO; (7) NGM's investigation and Plaintiff's proposed Complaint; and (8) NGM's reservation of rights. With

---

[19] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 90.

[20] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 90.

[21] Counsel for NGM explained that the Policy uses "Symbol 7" to identify the "covered motor vehicles under the Policy's UIM coverage." Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 98 (internal quotation marks omitted). NGM's counsel further stated that "the number '7' under the heading 'Covered Autos' on the 'Business Auto Coverage Form Declarations' does not represent the number of the vehicles insured under the Policy, but rather indicates which symbol—in this case, Symbol 7—is used to define the term 'covered autos' as used in the Policy." Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 100.

respect to Plaintiff's counsel's demand that NGM "accept" Plaintiff's UIM claim, NGM's counsel explained that:

> To the extent that your letter's use of the term "accept" is intended to be a demand that NGM issue immediate payment of the UIM coverage under the Policy, NGM has authorized me to advise you that it is continuing to review and evaluate the materials provided to it, as well as the status of the lawsuit against Ms. Reilly. NGM has further authorized me to advise you that it is not yet in a position to issue payment—if any—of the UIM benefits under the Policy, and it reserves its rights under the Policy and Pennsylvania law to continue and complete its investigation of your client's claimed injuries and damages.[22]

### D. This Lawsuit

On April 13, 2020, Plaintiff filed his Complaint against NGM, asserting claims for breach of contract and insurance bad faith, and alleging that the total available UIM coverage was $700,000—$100,000 stacked by seven vehicles. Plaintiff filed an Amended Complaint on July 6, 2020, conceding that the Policy covered only five vehicles, and that the available stacked coverage was therefore $500,000. On April 30, 2021, following the completion of discovery, NGM agreed to tender the $500,000 UIM policy limits. Plaintiff accepted the tender, which, as both parties agree, rendered Plaintiff's breach of contract claim moot. Accordingly, Plaintiff's sole remaining claim is insurance bad faith, as set forth in Count II of the Amended Complaint.

### II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] "Only disputes over facts that might affect the outcome of the suit under the governing

---

[22] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 98.
[23] Fed. R. Civ. P. 56(a).

law will properly preclude the entry of summary judgment."[24] A "genuine" dispute over material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[25] To evaluate a motion for summary judgment, the court must "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor."[26] Nonetheless, the non-moving party must support its opposition to the motion by pointing to evidence in the record.[27] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[28]

### III.  DISCUSSION

Under Pennsylvania law, "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may" award various damages.[29] The statute does not define "bad faith," but the Pennsylvania Supreme Court has defined bad faith to be "any frivolous or unfounded refusal to pay proceeds of a policy[.]"[30] To recover on a statutory bad faith claim, the claimant must show by clear and convincing evidence that the insurer (1) lacked a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded the lack of reasonable basis for the claim denial.[31] Proof of an insurer's motive of self-interest or ill-will is probative of the second prong, but is not required.[32] "Bad

---

[24] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[25] Id.

[26] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[27] *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986).

[28] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[29] 42 Pa. Cons. Stat. § 8371.

[30] *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 373 (Pa. 2017) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).

[31] *Id.* at 376-77 (citations omitted).

[32] *Id.* at 377.

faith claims are fact specific and depend on the conduct of the insurer *vis à vis* the insured."[33] Negligence or bad judgment does not equate to bad faith.[34] "A reasonable basis is all that is required to defeat a claim of bad faith."[35]

Plaintiff argues that NGM lacked a reasonable basis for delaying payment of the UIM claim until April 30, 2021, and that it knew of or recklessly disregarded its lack of a reasonable basis. While delay is relevant in determining whether an insurer acted in bad faith, "a long period of delay between demand and settlement does not, on its own, necessarily constitute bad faith."[36] Courts consider whether "the delay is attributable to the defendant," whether "the defendant had no reasonable basis for the actions it undertook which resulted in the delay," and whether "the defendant knew or recklessly disregarded the fact that it had no reasonable basis to deny payment."[37] Courts have also drawn a distinction between an insurer delaying necessary tasks and an insurer delaying settlement when the value of the claim is clear.[38] The former, without more, does not constitute not bad faith, while the latter often does.[39]

Plaintiff first argues that NGM should have initiated Plaintiff's UIM claim as early as October 13, 2017, when Plaintiff first contacted NGM about his injuries. In turn, NGM contends that Plaintiff "characterized the claim as 'medical only'" and did not inform NGM of his

---

[33] *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006) (*citing Williams v. Nationwide Mutual Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. Ct. 2000)).

[34] *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (citation omitted).

[35] *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (citing *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995)).

[36] *Seto v. State Farm Ins. Co.*, 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012) (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588-89 (E.D. Pa. 1999)).

[37] *Thomer v. Allstate Ins. Co.*, 790 F. Supp. 2d 360, 370 (E.D. Pa. 2011) (quoting *Wiedinmyer v. Harleysville Mut. Ins. Co.*, No. 94-19450, 1999 WL 1324202, at *215 (Pa. Com. Pl. Aug. 5, 1999)).

[38] *See Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 572 (E.D. Pa. 2000), *aff'd*, 261 F.3d 495 (3d Cir. 2001).

[39] *See id.*

intention to pursue a UIM claim until the Representation Letter on May 10, 2019.[40] Plaintiff maintains that NGM "unilaterally, and in violation of accepted insurance industry standards," recorded Plaintiff's claim as "medical only," and impermissibly failed to inform him of his UIM benefits under the Policy.[41] In support of this argument, Plaintiff relies on an insurance industry expert, who opines that insurance claim professionals are trained to "explain to the insured the need for investigation and how the insured can facilitate the investigation,"[42] which NGM failed to do.

Assuming that NGM's failure to inform was, as Plaintiff suggests, inconsistent with industry standards, this error was not so unreasonable as to constitute bad faith. As the Pennsylvania Superior Court held in *Albert v. Erie Insurance Exchange*,[43] "absent evidence of fraud or intentional deception, an insurer has no affirmative duty to advise its insured of every potential claim or benefit that could exist under a policy."[44] In holding that the insurer "had no duty to inform the insureds of the [applicable] benefit," the *Albert* Court noted that the insured "d[id] not allege that Erie persuaded her not to [exercise] her own . . . rights under the policy, or deceived her as to the . . . benefit under her policy."[45] Instead, the insured "simply allege[d] that Erie failed to advise her of the . . . benefit despite the fact that it [was] set forth unambiguously in the policy."[46]

---

[40] Def.'s Mot. Partial Summ. J. Ex. 8 [Doc. No. 33-9] at ECF page 37.

[41] Pl.'s Resp. Opp. [Doc. No. 34] at 7.

[42] Pl.'s Resp. Opp. Ex. A [Doc. No. 34-3] at ECF page 14 (citation omitted).

[43] 65 A.3d 923, 929-30 (Pa. Super. Ct. 2013) (citing *Miller v. Keystone*, 636 A.2d 1109, 1113 (Pa. 1994), *cert. denied*, 513 U.S. 875 (1994)).

[44] *Id.*

[45] *Id.* at 929-31.

[46] *Id.* at 930.

Much like the insured in *Albert*, Plaintiff does not allege that NGM deceived him or persuaded him not to assert his UIM rights under the Policy. Rather, Plaintiff argues that NGM merely failed to advise him of these rights and that it lacked a reasonable basis for doing so. Nor does Plaintiff argue that the language of the Policy is ambiguous as to whether it provided UIM coverage. The Policy clearly states that, subject to certain conditions, NGM would "pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle,'" and that "the damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.'"[47]

The Court recognizes that Plaintiff is not suggesting that NGM has a duty to "explain every permutation possible from an insured's choice of coverage,"[48] but rather that NGM should be required to explain any policy benefits that may apply under the circumstances. Nonetheless, the Court must look to Pennsylvania law, which requires that "[o]nce the insurance contract takes effect . . . the insured must take responsibility for his policy."[49] While Plaintiff argues that he was unaware of his UIM benefits, he testified at deposition that at the time he purchased the Policy, "it was [his] understanding" that the Policy provided "stacked" UIM coverage.[50] Plaintiff was obligated "to question his insurer at the time the insurance contract [was] entered into as to the type of coverage desired and the ramifications desired therefrom."[51] Thus, in the absence of

---

[47] Def.'s Mot. Partial Summ. J. [Doc. No. 33] ¶ 19.

[48] *See Albert*, 65 A.3d at 930 (quoting *Kilmore v. Erie Ins. Co.*, 595 A.2d 623, 626-27 (Pa. Super. Ct. 1991) ("While we acknowledge insurance is an area in which the contracting parties stand in somewhat special relationship to each other, the relationship is not so unique as to compel this Court to require an insurer to explain every permutation possible from an insured's choice of coverage.").

[49] *Id.* (same); *see Kilmore*, 595 A.2d at 627 (noting that "[e]ach insured has the right and obligation to question his insurer at the time the insurance contract is entered into as to the type of coverage desired and the ramifications arising therefrom.").

[50] *See* Def.'s Mot. Partial Summ. J. Ex. 3 [Doc. No. 33-4] at ECF page 4.

[51] *Albert*, 65 A.3d at 930 (quoting *Kilmore*, 595 A.2d at 627).

11

any evidence of a dishonest purpose or ill-will, NGM did not act in bad faith in failing to advise Plaintiff of his UIM benefits.

As for NGM's conduct after receiving the Representation Letter, NGM's handling of Plaintiff's UIM claim does not rise to the level of bad faith as a matter of Pennsylvania law. Plaintiff argues that NGM unreasonably failed to (1) independently investigate Plaintiff's medical records, (2) promptly respond to Plaintiff's demand package, and (3) tender its policy limits at any point prior to the close of discovery. However, NGM has produced evidence indicating that Plaintiff contributed to NGM's delays, and that NGM's conduct was, at worst, negligent. For instance, Plaintiff does not dispute that within one week of receiving the Representation Letter, NGM contacted Plaintiff's counsel for "information regarding [Plaintiff's] injuries and treatment to date."[52] Plaintiff's counsel then explicitly assured NGM that he had "requested [Plaintiff's] medical records and [would] forward them once they [were] received."[53] However, when NGM attempted to follow up with Plaintiff's counsel on two separate occasions, Plaintiff's counsel failed to respond.

Although NGM had at least some of the treatment records in connection with the first party claim, it was not reckless for NGM to rely on Plaintiff's counsel express representation that he would provide NGM with the relevant records.

Plaintiff further argues that NGM lacked a reasonable basis for delaying its response to Plaintiff's November 14, 2019 demand package. In support of this argument, Plaintiff's expert cites Section 146 of the UIPA, which provides that "[a]n appropriate reply shall be made within 10 working days on . . . pertinent communications from a claimant which reasonably suggest that

---

[52] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 4.
[53] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 6.

a response is expected," and that "[e]very insurer shall complete investigation of a claim within 30 days after notification of claim, unless the investigation cannot reasonably be completed within the time."[54]

As a threshold matter, because the Pennsylvania Supreme Court has held that there is no private right of action under the UIPA,[55] courts in this Circuit have "refused to consider UIPA violations as evidence of bad faith."[56] Further, it is undisputed that after Plaintiff's counsel's follow-up letter on December 10, 2019, Gucciardi promptly responded, stating that he received the demand package and that he was requesting that Plaintiff submit to an EUO regarding the extent of his injuries. Gucciardi also clarified that his records showed only "[five] vehicles on the Policy [as] opposed to [seven]."[57]

NGM contends that requesting an EUO from Plaintiff was reasonable given:

> (1) Plaintiff's preexisting cervical spine condition and his documented history of neck pain; (2) the extent of the property damage resulting from the subject accident; and (3) the fact that more than two years after the subject accident, Plaintiff had not yet had the cervical spine surgery that he claimed was necessary in light of his alleged injuries.[58]

---

[54] 31 Pa. Code §§ 146.5, 146.6; see Pl.'s Resp. Opp. Ex. A [Doc. No. 34-3] at ECF page 19. Section 146.6 further provides that "[i]f the investigation cannot be completed within 30 days, and every 45 days thereafter, the insurer shall provide the claimant with a reasonable written explanation for the delay and state when a decision on the claim may be expected." 31 Pa. Code § 146.6.

[55] See Leach v. Northwestern Mut. Ins. Co., 262 F. App'x 445, 459 (3d Cir. 2008) (citing D'Ambrosio v. Penn. Nat'l Mut. Cas. Ins. Co., 431 A.2d 966, 970 (Pa. 1981) (finding that the UIPA can be enforced only by the state insurance commissioner)); see also Terletsky, 649 A.2d at 688 (defining "bad faith" in the context of 42 Pa. Cons. Stat. § 8371).

[56] Watson v. Nationwide Mut. Ins. Co., No. 11-1762, 2011 WL 4894073, at *4 (E.D. Pa. Oct. 12, 2011) (citing Leach, 262 F. App'x at 459 (holding that "the District Court did not err in finding that, insofar as [Plaintiff's] claim for bad faith was based upon an alleged violation of the UIPA, it failed as a matter of law.")); see Dinner v. United Services Auto. Ass'n Cas. Ins. Co., 29 F. App'x 823, 827 (3d Cir. 2002) ("[M]uch of the conduct proscribed by the [UIPA] is wholly irrelevant to whether an insurer lacks a reasonable basis for denying benefits and, if so, whether it knew or recklessly disregarded that fact.").

[57] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 94.

[58] Def.'s Br. Supp. Mot. Partial Summ. J. [Doc. No. 33-1] at 15.

Nonetheless, the Court notes that NGM failed to communicate these reasons to Plaintiff's counsel in response to the December 16, 2019 letter, which explicitly inquired "why [NGM] believe[d] that an examination under oath performed by an attorney would reveal anything about the extent of [Plaintiff's] injuries."[59] NGM's own expert stated that "there is no explanation in the file . . . for the further delay which ensued between December 16, 2019 and February 25, 2020, when Mr. Miles wrote to [Plaintiff's counsel] requesting additional information."[60] The Court agrees that NGM should have provided Plaintiff's counsel with an explanation as to why it needed the requested information. However, it is undisputed that Plaintiff's claim had not yet been reassigned to a claims adjuster, and that NGM contacted Plaintiff immediately upon the claim's reassignment. Plaintiff has not demonstrated that NGM's oversights amount to more than mere "inadequacies in the investigation," which, while perhaps "negligent or indicative of poor judgment," are "insufficient to sustain a bad faith claim."[61]

As NGM's counsel explained in his March 31, 2020 letter, it was not unreasonable for NGM to delay consenting to a settlement that *had not yet occurred*. It is undisputed that Erie did not agree to tender its $100,000 liability insurance policy limits until August 4, 2020. Upon receiving notice of the settlement, NGM promptly reviewed the declarations page for Reilly's Erie policy, confirmed that Reilly did not have excess coverage, and provided Plaintiff with its consent one week later.

Finally, with respect to NGM's conduct after Plaintiff initiated this lawsuit, Plaintiff argues that NGM "aggressively litigated" this action and impermissibly "delay[ed] payment"

---

[59] Def.'s Mot. Partial Summ. J. Ex. 9 [Doc. No. 33-10] at ECF page 92.

[60] Pl.'s Resp. Opp. Ex. L. [Doc. No. 34-14] at ECF page 18.

[61] *See Lehman v. Victoria Fire & Cas. Ins. Co.*, No. 09-1542, 2011 WL 2457928, at *10 (W.D. Pa. June 16, 2011) (citations omitted).

until after its expert had reviewed the relevant discovery documents.[62] There is nothing improper about NGM availing itself of the tools of discovery by taking Plaintiff's deposition, issuing subpoenas based on his testimony, and submitting documents for expert review. Plaintiff fails to demonstrate that NGM acted unreasonably in utilizing the full discovery period as set forth in the Court's scheduling order.

It is clear from the record that NGM failed to handle Plaintiff's claim with the upmost diligence and care. However, an insurance company's procedures need only be reasonable, not perfect.[63] Even considering NGM's actions as a whole, the evidence reveals that both parties contributed to the delays in this case, and that NGM's overarching goal was to obtain the necessary information to reasonably evaluate Plaintiff's claim. Because there is a lack of clear and convincing evidence to support a conclusion that NGM acted in bad faith, NGM's motion will be granted.

### IV. CONCLUSION

For the reasons stated above, NGM's Motion for Partial Summary Judgment as to Count II of Plaintiff's Amended Complaint will be granted. An appropriate order follows.

---

[62] Pl.'s Br. Opp. [Doc. No. 34-2] at 2.
[63] *See Lincoln Benefit Life Co. v. Bowman*, 221 F. Supp. 3d 617, 633 (E.D. Pa. 2016).